HOBSON, Justice.
Appellants filed a complaint in the Circuit Court of Lee County, Florida, against the appellees' in which they sought to have a certain house and several lots located in the City of Fort Myers declared the homestead of the decedent Philip Hussa. Rosa Hussa was the wife and 'is the widow of Philip Hussa, deceased. They- lived in New York .City and because of his condition of health they visited Florida, during the ¡Winter season of 1939-40 and. rented a home in Fort Myers. During their ten *760 ancy Philip Hussa decided to buy this home and entered into negotiations for the purchase thereof prior to the return of the Hussas to their'home in:New York.
It is not clear from the record just when Rosa Hussa left Fort Myers but it is evident that she returned to New York City in the Spring of 1940. Thereafter, upon completing the negotiations' for purchase of the subject property and acquiring a deed thereto1, Dr. Hussa returned to New York. The appellant Norman H. Bonter, who never lived in Florida, was the adopted son of Dr. Philip Hussa, deceased. Following the purchase of the house and lots in Fort Myers, Philip Hussa, deceased, formed and followed the pattern of spending ‘ the Winters in this ’ home and the Summers in New York.
After the purchase of the Fort Myers property Rosa Hussa continued to be a citizen and resident of New York State and exercised the right of franchise there at all times up to the death of Philip Hussa. Appellant Rosa Hussa visited Fort Myers on two occasions after-the purchase of the subject property but she did not live therein with Dr. Hussa or alone. Although she had never returned to Fort Myers after the Winter season of 1943 until subsequent to the death of her husband in 1950, she then came to Fort Myers, lived in the home and claimed it as homestead property.From the time of the purchase of the Fort Myers property until after Dr. Philip Hussa’s death Rosa Hussa was an actual bona fide resident of New York, City and occupied as her home an apartment at 315 West 79th Street. Philip Hussa left a will in which he devised the subject property to his brother Leopold Hussa with the understanding that the latter was to turn said property over to appellee Grace Wilson in payment of Philip Hussa’s obligation to her of .approximately $17,500 which sum she had loaned to decedent during his lifetime.
Appellants lay great stress upon the fact that the decedent Philip Hussa lived in the same apartment with his wife Rosa Hussa each Summer until shortly prior to his death. . At this juncture it is deemed advisable to observe that although he admittedly lived in the same apartment with Rosa Hussa in the Summertime, as before stated, the testimony discloses the fact that they did not live together as man and wife. Moreover, when Dr. Hussa, returned to New York City in the Spring or Summer of 1950 he rented a cottage, at Woodmere on Long Island where he lived alone and in August of that year he passed away.
We are confronted with two questions on this appeal: (1) Did the- property in Fort Myers, Florida, ever become vested with the character of “homestead property” ? (2) If. it ever acquired the status of “homestead property” was there an abandonment of the homestead as such?
The learned Chancellor who considered this case' in the court below entered a final decree denying the relief prayed for by the appellants. It cannot be gainsaid that by necessary implication the Chancellor upheld the contention of the appel-lees that the subject property never constituted a homestead as contemplated by-our Constitution or that if it ever acquired such status there was a definite abandonment of the property as homestead property.
After careful study and consideration1 of the transcript of the testimony in the-light of the able briefs prepared by counsel for the respective parties litigant, we-have concluded that appellants have failed to carry their burden of making it-clearly apparent that the Chancellor erred in entering the final decree from which, this appeal is prosecuted. There is conflicting testimony but we find in the record, competent . substantial evidence which sustains the view entertained by the Chancellor and which formed the predicate for the final decree entered by him. We-have repeatedly held that we will not disturb findings of facts made by a Chancellor unless it appears that they are clearly erroneous or that they are not sustained, by competent substantial evidence contained in the transcript of record.
Appellants rely rather confidently upon our opinion in the case of O’Neal v. Miller, 143 Fla. 171, 196 So. 478, 129 *761 A.L.R. 295. It is their contention that the above cited case should control the decision in the instant suit because they cannot see any distinction which could reasonably be- drawn between the two cases. In the case of O’Neal V. Miller, supra, we said:
“Under such conditions and circumstances there was no abandonment of the homestead of the husband in Florida on which he resided with his ■wife and unmarried daughter as his family, before the wife and daughter went to another State, and on which homestead the husband continued to reside until his death, the marital relation continuing and neither the wife nor the minor unmarried daughter having acquired a home or a domicile ■separate from that of the husband .and fathei.” (Italics supplied.)
The above quoted portion of the opinion in the case of O’Neal v. Miller, supra, discloses very clearly a state of facts differing materially from that which was determined by the Chancellor to exist with reference to the instant case. In the former case the husband and father resided with his wife and unmarried daughter upon the property in question; the wife and daughter removed themselves from the home and went to another state while the husband and father continued to reside upon the alleged homestead property until his death and neither the wife not the minor daughter acquired a home or domicile separate from that of the husband and father. In the case at bar the Chancellor, although not specifically — yet by necessary implication — decided as matters of fact that all during the ten year period subsequent to the purchase of the property in Fort Myers and prior to Dr. Philip Hussa’s death, Rosa Hussa maintained her separate apartment in New York City where she was a legal resident and only visited in Fort Myers on two occasions during that long period of time but on each of these visits she lived in a rented room or apartment and not upon the subject property; she was a registered voter and voted in most, if not all, elections in New York. ' The Hussas never lived together as husband and wife after the purchase of the property involved in this litigation, nor did Dr. Philip Hussa’s adopted son, Norman H. Bonter, ever live in the home at Fort Myers as a member of the family or otherwise..
From an undeterminable date shortly prior to the acquistion of a deed to the subject property by Dr. Philip Hussa and until his death he and Rosa Hussa each maintained a separate existence and neither was dependent upon or recognized the other’s authority. See Jordan v. Jordan, 100 Fla. 1586, 132 So. 466. As was stated in the case of Johns v. Bowden, 68 Fla. 32, 66 So. 155, 159, “to constitute a ‘head of a family’ there must be at least two persons who live together in the relation of one family, and one of them must be ‘the head’ of that ‘family.’ ”
Under the facts of this case as determined by the Chancellor we are of the opinion that the subject property never acquired the status of homestead property and we are confident that if it could be said that the property was ever homestead property there was a clear abandonment of it as such. We recognize the fact that a contrary view could have been taken by the Chancellor upon a consideration of the testimony which was conflicting but we are not 'permitted, under our well established rule, to substitute our judgment for that of the fact-finding arbiter unless the findings made by him are clearly erroneous in that they are not sustained by any competent substantial evidence.
The final decree from which this appeal was taken should be and it is hereby affirmed.
TERRELL, Acting Chief Justice, and DREW, J., and JONES, Associate Justice, concur.