402 So.2d 486 (1981)
Omega D. GRANT, Appellant,
v.
CREDITHRIFT OF AMERICA, INC., and Dale Carson, Sheriff, Appellees.
No. YY-46.
District Court of Appeal of Florida, First District.
August 6, 1981.
*487 Donald B. Freeman, Jacksonville Area Legal Aid, Inc., Jacksonville, for appellant.
No appearance for appellees.
ROBERT P. SMITH, Jr., Chief Judge.
Despite having notice in regular statutory form that Omega Grant claimed a homestead interest in the house and lot on Rhode Island Drive, the Jacksonville sheriff put the property up for sale to satisfy a judgment in favor of Credithrift against Ms. Grant and her former husband, who owned the place as tenants in common. That is the sheriff's practice; when property to be sold to satisfy a debt is claimed homestead, the sheriff conducts a sale despite the claim but then refuses to give the buyer a deed. When as here one debtor's undivided interest in the land is indisputably subject to sale, but the homesteader's interest is not, the effect of the sheriff's practice is to require the buyer to sue the homesteader, putting her claim to proof, as an incident to the buyer's suit to identify and secure a deed for the nonhomestead interest. In its effect on the homesteader, in this case Ms. Grant, that practice violates the letter and spirit of Florida's statutes exempting homestead property from forced sale, so we reverse.
In January 1979 Credithrift obtained a final judgment for about $1,000 against Omega Grant and her husband, and took out a writ of execution. In April of that year the Grants were divorced, but Ms. Grant was awarded use of the former marital home until the youngest of her three minor children reaches age 18. Following the divorce, each spouse had an undivided one-half interest in the property. In late September, Ms. Grant received notice that a sheriff's sale of her home was scheduled for October 31 to satisfy Credithrift's judgment. On October 22, following the procedure specified by section 222.02, Florida Statutes (1979), Ms. Grant filed an affidavit with the sheriff claiming a homestead interest in one-half the property and its exemption from forced sale. Nevertheless, Sheriff Carson went on with the sale, but then refused to issue a deed to Credithrift, the high bidder.
Credithrift eventually sued the sheriff and both the Grants, seeking an identification of the nonexempt property and a deed to that portion. Ms. Grant cross-claimed against Carson asking for a declaration that his levy and forced sale practices were illegal. The trial court found that appellant's one-half interest was exempt from sale, but also held that Carson acted properly in subjecting Ms. Grant's claimed homestead interest to sale, for Ms. Grant had the burden to establish her homestead claim. The court evidently concluded that Ms. Grant had the opportunity to establish her claim either in Credithrift's postsale litigation or in a suit that Ms. Grant might file pursuant to other sections of Chapter 222.
Initially, we address the sheriff's possible argument[1] that this case should be dismissed as moot because the trial court vindicated appellant's homestead claim and she is no longer subject to the sheriff's *488 challenged practice. Should we decline on this ground to consider the question presented, no homesteader could ever secure appellate review of the sheriff's practice, for the circuit court in every proper case would already have determined retrospectively that the homesteader's interest was exempt from the forced sale to which it was subjected. Because the challenged practice is thus "capable of repetition, yet evading review," the issue requires resolution. Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147, 161 (1973); Ocala Star Banner Corp. v. Sturgis, 388 So.2d 1367, 1369 (Fla. 5th DCA 1980).
Chapter 222 implements Florida's constitutional[2] protection against forced sale of homestead property to satisfy judgment creditors. Before levy, § 222.01 provides that a property owner "may" make a signed, written declaration that certain property qualifies as homestead and record this declaration in circuit court. Ms. Grant concedes that she did not follow this procedure. However, she did comply with the procedures under § 222.02 before the scheduled October 31 sale. Section 222.02 provides:
Whenever a levy is made upon the lands ... of such head of a family whose homestead has not been set apart and selected [under § 222.01] such person ... may in writing notify the officer making such levy, by notice under oath made before any officer of this state duly authorized to administer the same, at any time before the day appointed for the sale thereof, of what he regards as his homestead, with a description thereof, and the remainder only shall be subject to sale under such levy. (emphasis added)
Ms. Grant's failure to file a "preventive"[3] prelevy designation of homestead under § 222.01[4] does not preclude her from asserting homestead rights once she receives word that her home is about to be auctioned off to strangers to satisfy a debt. Absent notice that we are in need of this protection against forced sale of our homes, few of us are likely to travel down to the courthouse and make a § 222.01 designation just in case it might prove handy some day. Compliance with either statute  recording a prelevy designation in circuit court under § 222.01 or filing a postlevy sworn statement with the levying officer under § 222.02  is effective to set apart and designate one's homestead.
The question then becomes what effect a timely § 222.02 designation has on the sheriff's imminent sale. We recognize that the sheriff has a ministerial duty to levy on property described in writs of execution. Section 30.30(1), Fla. Stat. But § 222.02 clearly tempers that duty, and states without qualification that once a sheriff receives the affidavit claiming the exemption in proper form, the unclaimed "remainder only shall be subject to sale."
The trial court erred in concluding that Chapter 222 places the burden on the claimant to do something more to establish his homestead claim, such as seeking a circuit court judgment declaring through § 222.08 that the property is indeed homestead, or enjoining the sale under § 222.09. Avila South Condominium Ass'n, Inc. v. Kappa Corp., 347 So.2d 599 (Fla. 1977), cited in the trial court's judgment, involved the different question of whether plaintiffs could claim violation of their constitutional homestead rights when their complaint did not allege facts establishing the condominiums *489 as homesteads at the appropriate time. The case did not involve construction of Chapter 222. Moreover, appellant's affidavit in this case did set forth facts that would establish the homestead character of her property.
Mindful of the special affection and protection Florida courts have traditionally bestowed on the homestead, we think the proper condition of a homesteader who has filed the required affidavit with the levying officer should be one of repose and security in the home, a "refuge from the stresses and strains of misfortune." Collins v. Collins, 150 Fla. 374, 377, 7 So.2d 443, 444 (1942); see also Barlow v. Barlow, 156 Fla. 458, 23 So.2d 723 (1945).
The sheriff's practice of selling claimed homestead interests along with nonexempt interests, and leaving homesteaders to unravel their entangled affairs in postsale litigation, with all accompanying expense and anxiety, is irreconcilable with the constitutionally favored status of the Florida homestead. Ms. Grant and her three children, already disrupted by a recent divorce, were beset by doubt as to whether they had any claim at all to their home. As the Supreme Court noted long ago, levy and advertisement of sale of exempt homestead property causes "unnecessary anxiety and disquiet to the owner and his family." Lewton v. Hower, 18 Fla. 872, 877 (1882). The sheriff's sale also placed a cloud on title to the newly divorced mother's interest in the property, which was likely to affect its market value had she needed to sell her interest to support her family prior to final judgment by the circuit court. Had she chosen to seek affirmative removal of the cloud on title, appellant would have faced legal costs that were entirely unnecessary. As it was, appellant did incur the costs of participating as a codefendant in the suit filed by Credithrift to wrest the deed from the sheriff. And aside from these untoward effects on the family living on exempt homestead property, the sheriff's practice required litigation that the parties might have chosen to avoid.
Under Chapter 222, the sheriff is a neutral participant in the forced sale process. He may sell only the land that is not designated by properly drawn affidavit as homestead. The statutes give him no authority to presume that the homestead claim is unfounded or to force the parties into court to sort things out after the sale. When the homestead claim affidavit is filed, the creditor has a means, clearly provided under § 222.10[5], to challenge the homestead claim, should he wish to do so. That choice is to be made by the creditor, however, not by the levying officer. Insofar as the circuit court found the sheriff's practices proper, the final judgment is REVERSED.
JOANOS and THOMPSON, JJ., concur.
NOTES
[1] Lamentably, counsel for Sheriff Carson neither filed a brief nor made an appearance at oral argument, so we have not had the benefit of any arguments he might have made. Appellee Credithrift likewise declined to participate through counsel, stating that it was not involved in the controversy raised on appeal.
[2] Art. X, § 4(a), Fla. Const.
[3] Maines & Maines, Our Legal Chameleon Revisited: Florida's Homestead Exemption, 30 U.Fla.L.Rev. 227, 284 (1978).
[4] Section 222.01, Fla. Stat. (1979):

Whenever any person, being the head of a family, residing in this state desires to avail himself of the benefit of the provisions of the constitution and laws exempting property as a homestead from forced sale under any process of law, he may make a statement, in writing, containing a description of the real property, mobile home, or modular home claimed to be exempt and declaring that the same is the homestead of the party in whose behalf such claim shall be made. Such statement shall be signed by the person making the same and recorded in the circuit court.
[5] Section 222.10, Fla. Stat. (1979):

The circuit courts have equity jurisdiction upon bill filed by a creditor or other person interested in enforcing any unsatisfied judgment or decree, to determine whether any property, real or personal, claimed to be exempt, is so exempt, and in case it be not exempt, the court shall, by its decree subject it, or so much thereof as may be necessary, to the satisfaction of said judgment or decree and may enjoin the sheriff or other officer from setting apart as exempt property, real or personal, which is not exempt, and may annul all exemptions made and set apart by the sheriff or other officer.